RIPPLE, Circuit Judge.
Michael Kingsley brought this action under 42 U.S.C. § 1983 against six staff members of a Wisconsin county jail, where he had been held as a pretrial detainee in 2010. Mr. Kingsley alleged that during his forcible transfer to a new cell, which included the application of a taser, the defendants had violated various of his constitutional and statutory rights. The district court granted partial summary judgment for the defendants; a single claim of excessive force against Sgt. Stan Hen-drickson and Deputy Fritz Degner proceeded to trial. The jury returned a verdict for the defendants.
*445 Mr. Kingsley now appeals the judgment entered on the verdict, contending that the jury received erroneous and confusing instructions. Specifically, Mr. Kingsley contends that the district court conflated the standards for excessive force under the Eighth and Fourteenth Amendments and, as a result, wrongly instructed the jury to consider the subjective intent of the defendants. Mr. Kingsley also contends that the instructions misstated the harm that he must prove to obtain relief. We hold that the instructions were not an erroneous or confusing statement of the law of this circuit and that Mr. Kingsley affirmatively acquiesced to the instruction dealing with harm. Accordingly, we affirm the judgment of the district court.
I
BACKGROUND
A.
In April 2010, Mr. Kingsley was booked into the Monroe County Jail in Sparta, Wisconsin, as a pretrial detainee. On May 1, he was transferred to the facility’s south cell block.
On May 20, 2010, a deputy performing a cell check noticed a sheet of yellow legal paper covering the light above Mr. Kings-ley’s bed and ordered him to take it down. Mr. Kingsley refused the order and answered that he had not put the paper there.[1] The deputy moved on. When he returned for a further cell check later in the evening, he noticed that the paper had not been removed and again ordered Mr. Kingsley to take it down. After another refusal and a warning of possible disciplinary action, the deputy issued him a minor violation and reported it to Sgt. Hendrickson. Sgt. Hendrickson informed Deputy Karl Blanton that Mr. Kingsley would have to remove the paper in the morning.
When Deputy Blanton made his morning rounds, he ordered Mr. Kingsley to take down the paper. Mr. Kingsley did not respond and did not remove the paper. A few minutes later, Sgt. Hendrickson came to deliver Mr. Kingsley’s medication, and he again ordered Mr. Kingsley to take down the paper. After several requests, Mr. Kingsley again refused, stating once again that he had not put the paper there. Sgt. Hendrickson next called the jail administrator, Lieutenant Robert Conroy.
Lt. Conroy then went to Mr. Kingsley’s cell. After Mr. Kingsley refused his order, Lt. Conroy said jail staff would take the paper down and would have to transfer Mr. Kingsley to another cell in the interim. He also threatened discipline.
A few minutes later, Sgt. Hendrickson, Deputy Blanton, Lt. Conroy Deputy Fritz Degner and Deputy Sheriff Shisler arrived at the cell. They ordered Mr. Kingsley to stand up and to back up to the door with his hands behind his back. Mr. Kingsley asked why and protested that he had done nothing wrong. Deputy Degner told Mr. Kingsley to follow the order or he would be tasered. He was again ordered to get up, but he continued to lie facedown on his bunk. He did, however, put his hands behind his back.
At this point, Sgt. Hendrickson and Deputy Blanton entered the cell, and, with some difficulty (which they attribute to Mr. Kingsley “tensing” his arms and holding them apart),[2] they were able to handcuff him. Mr. Kingsley would not follow an order to stand, so they pulled him to his feet. Mr. Kingsley then fell to his knees; *446 he claimed that, in pulling him off of the bed, the officers had smacked his feet on the bedframe, causing him pain. He claimed that the pain was so severe that he could not stand or walk. The officer therefore carried him out of the cell by holding him under his arms and placed him facedown in the hallway. When he would not answer questions about his foot injury he was taken in the same manner to a receiving cell and placed facedown on the bunk.
Once he was on the receiving-cell bunk, the officers attempted to remove the handcuffs. The evidence at trial was conflicting on the later course of events.[3] The defendants say that Mr. Kingsley resisted their effort, pulling the handcuffs apart and trying to get up. Mr. Kingsley denied this resistance at trial. At some point, Sgt. Hendrickson put his knee in Mr. Kings-ley’s back, and Mr. Kingsley told him, in colorful language, to get off him. Mr. Kingsley claims that the defendants then smashed his head into the concrete bunk, an allegation the defendants deny.
After some further verbal exchange,[4] Deputy Degner applied a taser for five seconds on Mr. Kingsley’s back. Lt. Con-roy then ordered all of the staff to clear the cell. Fifteen minutes later, the staff returned and were able to remove the handcuffs. Mr. Kingsley was placed on a medical watch, but refused the attention of a nurse.[5]
B.
In December 2010, Mr. Kingsley, proceeding pro se, brought this action in the district court. His principal theory was that the defendants had violated his due process rights under the Fourteenth Amendment.[6] His initial complaint presented several claims against seven Monroe County defendants, including an excessive force claim relating only to Sgt. Hendrickson and Deputy Degner.
The parties cross-moved for summary judgment. The district court granted partial judgment for the defendants on a procedural due process claim relating to Mr. Kingsley’s discipline by jail staff. It concluded, however, that material issues of fact remained that precluded judgment on the excessive force claim based on the officers’ conduct in the receiving cell. Specifically, the court identified “a dispute about whether defendants slammed plaintiffs head into the concrete bed and used a taser against him solely for the purpose of causing him harm.”[7] Although the officers clearly had difficulty removing the handcuffs, Mr. Kingsley claims that it was because they had been applied too tightly and Sgt. Hendrickson’s kneeling on his back had caused his body to tense; the *447 officers claim that Mr. Kingsley was resisting. The court observed that, from the video, “it is not clear ... whether plaintiff was resisting or struggling. [He] does not appear to be moving his body around aggressively or very much at all.”[8]
The court noted the case law that held that it was reasonable to use force against an inmate who refused to comply with orders but concluded that the issue in the case was “whether [the] defendants’ response to plaintiffs obstinance was reasonable under the circumstances or whether it was excessive and was intended to cause [the] plaintiff harm.”[9] The court also concluded that, because a jury could find that the defendants had acted with malice, qualified immunity was not available. Although the court, in its ruling, concluded that the relevant constitutional right was contained within the Fourteenth Amendment because of Mr. Kingsley’s status as a pretrial detainee, the court applied Eighth Amendment excessive force standards in assessing the claim.
Following the grant of summary judgment, the parties stipulated to the dismissal with prejudice of all outstanding claims except the excessive force claim against Sgt. Hendrickson and Deputy Degner. Counsel was appointed for Mr. Kingsley and the case proceeded to trial. In pretrial proceedings, the district court proposed an instruction on excessive force to which both parties objected, and the court made various modifications. At the close of the evidence, the parties revisited the instruction and again objected to its content. Again, the district court made some modification and added a clarifying instruction. The court finally settled on the following instruction:
Excessive force means force applied recklessly that is unreasonable in light of the facts and circumstances of the time. Thus, to succeed on his claim of excessive use of force, plaintiff must prove each of the following factors by a preponderance of the evidence:
(1) Defendants used force on plaintiff;
(2) Defendants’ use of force was unreasonable in light of the facts and circumstances at the time;
(3) Defendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiffs safety by failing to take reasonable measures to minimize the risk of harm to plaintiff; and
(4) Defendants’ conduct caused some harm to plaintiff.
In deciding whether one or more defendants used “unreasonable” force against plaintiff, you must consider whether it was unreasonable from the perspective of a reasonable officer facing the same circumstances that defendants faced. You must make this decision based on what defendants knew at the time of the incident, not based on what you know now.
Also, in deciding whether one or more defendants used unreasonable force and acted with reckless disregard of plaintiffs rights, you may consider such factors as:
• The need to use force;
• The relationship between the need to use force and the amount of force used;
• The extent of plaintiffs injury;
• Whether defendants reasonably believed there was a threat to the safety of staff or prisoners; and
*448 • Any efforts made by defendants to limit the amount of force used.[10]
Mr. Kingsley’s counsel objected to the inclusion of “harm” as an element of an excessive force claim. He contended that the jury might confuse the element of harm for some sort of lasting or significant injury. Counsel first requested a clarifying instruction that “pain is considered harm.”[11] When the court began to offer a preferred alternative, “[A] person can be harmed even if he does not suffer a lasting injury or ...,” plaintiffs counsel interjected, “Or severe injury”[12] Following this exchange, the jury was instructed that “[a] person can be harmed even if he did not suffer a severe injury” [13]
The jury returned a verdict for the defendants, and the district court entered judgment dismissing the case. Mr. Kings-ley timely appeals the judgment. He submits that the instruction misstated the law and confused the jury on the subjects of both the intent and harm necessary to establish an excessive force claim in the pretrial detainee context.
II
DISCUSSION
On appeal, Mr. Kingsley raises two challenges to the jury instructions. First, he claims that the instruction wrongfully conflated the standard for excessive force claims under the Eighth and Fourteenth Amendments and that, as a result, the instructions incorrectly required him to demonstrate that the defendants acted with reckless disregard for his safety. Second, Mr. Kingsley claims that the instruction regarding harm, which stated that harm was an element of the claim and that it could be demonstrated without a showing of “severe injury,” was both incorrect and confusing.
We shall assess each of his objections to the instructions in turn. Our review of jury instructions is de novo. Huff v. Sheahan, 493 F.3d 893, 899 (7th Cir.2007). We must “determine whether, taken as a whole, [the instructions] correctly and completely informed the jury of the applicable law.” Id. “We defer to the district court’s phrasing of an instruction that accurately states the law; however, we shall reverse when the instructions misstate the law or fail to convey the relevant legal principles in full and when those shortcomings confuse or mislead the jury and prejudice the objecting litigant.” Id. (citation omitted) (internal quotation marks omitted).
A.
1.
A claim of excessive force, like the one at issue here, is, at bottom, one that seeks to impose liability for “physically abusive governmental conduct.” Graham v. Conor, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The right to be free from such abuse derives from various provisions of the Bill of Rights. The Fourth Amendment affords protection to the person in the context of a seizure, id.; the Eighth Amendment applies when, following the constitutional guarantees of our criminal process, there has been an adjudication of guilt and an imposition of sentence, Ingraham v. Wright, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Between the status of arrestee and sentenced prisoner is the intermediate *449 status of the detainee, who similarly is entitled to protection from physically abusive government conduct. The constitutional source of that protection lies in the right to be free from deprivations of liberty without due process of law. Bell v. Wolfish, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
In sum, we evaluate a claim of excessive force not under “some generalized ‘excessive force’ standard,” but “by reference to the specific constitutional standard which governs that right.” Graham, 490 U.S. at 394, 109 S.Ct. 1865. Mr. Kingsley was a pretrial detainee at the time of the tasing incident; therefore, the Fourteenth Amendment’s Due Process Clause is the source of his substantive right and determines the applicable standards to evaluate his claim. See Ingraham, 430 U.S. at 672 n. 40, 97 S.Ct. 1401; Forrest v. Prine, 620 F.3d 739, 743-44 (7th Cir.2010).
2.
In examining the contours of the right to be free from excessive force as an element of due process, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), is our primary touchstone. There, the Supreme Court evaluated a claim regarding the conditions of confinement for pretrial detainees. “[UJnder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.” Id. at 535, 99 S.Ct. 1861 (emphasis added). As a consequence, “the proper inquiry” is whether the treatment of the detainee “amount[s] to punishment.” Id. The Supreme Court markedly contrasted due process protections for detainees against the rights of sentenced inmates: “A sentenced inmate[ ] ... may be punished, although that punishment may not be ‘cruel and unusual’ under the Eighth Amendment.” Id. at 535 n. 16, 99 S.Ct. 1861 (emphasis added).
Our cases also have noted that the protection afforded by the Due Process Clause is broader than that afforded under the Eighth Amendment. See Lewis v. Downey, 581 F.3d 467, 474 (7th Cir.2009) (“[T]he Due Process Clause, which prohibits all ‘punishment,’ affords broader protection than the Eighth Amendment’s protection against only punishment that is ‘cruel and unusual.’ ”); id. at 475, 581 F.3d 467 (noting that, in the excessive force context, “anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment”); cf. Forrest, 620 F.3d at 743-44 (acknowledging that “[t]he Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment’s ban on cruel and unusual punishment”). Of course, “[n]ot every disability imposed during pretrial detention amounts to ‘punishment’ in the constitutional sense.” Bell, 441 U.S. at 537, 99 S.Ct. 1861.[14] We must ask whether a particular action was taken “for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.” Id. at 538, 99 S.Ct. 1861.[15]
*450 Notably, the Due Process Clause provides its own limiting principle; the Clause protects against only abusive conduct that is more than negligence, Daniels v. Williams, 474 U.S. 327, 334, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), or even gross negligence, Archie v. City of Racine, 847 F.2d 1211, 1219 (7th Cir.1988) (en banc). Indeed, we have said that the official conduct must be at least reckless. See Archie, 847 F.2d at 1219-20. Recklessness, which necessarily incorporates some measure of subjective intent, stands in contrast to the rule under the Fourth Amendment that focuses only on whether the government conduct was “objectively reasonable” in light of all of the facts and circumstances. Graham, 490 U.S. at 397, 109 S.Ct. 1865 (emphasis added) (internal quotation marks omitted); see also Common v. City of Chicago, 661 F.3d 940, 943 (7th Cir.2011).
While these cases make clear the basic theoretical and doctrinal distinction among the constitutional standards governing the various categories of confinement, they do not provide a practical framework for distinguishing the obligations of those constrained by each of the constitutional provisions. Indeed, on more than one occasion, while noting the distinction between pretrial and posttrial incarceration, we have decided the case before us by employing the more familiar Eighth Amendment standard. See, e.g., Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 664 (7th Cir.2012) (“[C]ourts still look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment’s due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners, and the Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees.” (citations omitted)); Forrest, 620 F.3d at 744 (affirming summary judgment for the defendant officers where the plaintiff detainee had “not explained! ] ... how any protections guaranteed by the Fourteenth Amendment provide him with more protection than he would receive under traditional Eighth Amendment standards”); Lewis, 581 F.3d at 474 (reversing summary judgment for officer in Fourteenth Amendment case upon concluding that the plaintiff had raised a genuine issue of fact even when considered under the more stringent standard set by the Eighth Amendment).
Here, we also have no need to delineate, in any comprehensive fashion, the differences between the rights of pretrial detainees and adjudicated criminals. Our task is less ambitious. We must determine the adequacy of an instruction given to a jury tasked with determining whether excessive force was employed against a pretrial detainee. We simply must determine whether the instruction at issue was sufficiently precise in its description of the due process right of a pretrial detainee to ensure that Mr. Kingsley’s case was fairly presented to the jury.
Several of our cases have explored the problem of describing, in the due process context, the right of a detainee to be free from excessive force. In Titran v. Ackman, 893 F.2d 145 (7th Cir.1990), we expressed concern about defining a detainee’s due process right to be free from excessive force by use of highly subjective terms such as “grossly disproportionate” or “shocks the conscience.” Id. at 147 (internal quotation marks omitted). We pointed out that, in the usual course of events, “the propriety of using force on a *451 person in custody pending trial will track the Fourth Amendment: the court must ask whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them.” Id. This emphasis on the objective standard of a reasonable prison officer was written, of course, against the background of the amorphous “shocks the conscience” standard. See id. at 147-48. Notably, however, while giving us the objective criteria borrowed from the Fourth Amendment as a more concrete touchstone against which to measure the conduct of government officials, the court in Titran also pointedly remarked that, because “the Due Process Clause does not proscribe negligence or even gross negligence, the search for ‘punishment’ cannot be wholly objective.” Id. at 147 (emphasis added).
Wilson v. Williams, 83 F.3d 870 (7th Cir.1996), a ease that came to us posttrial and that involved the correctness of the jury instructions, afforded us an occasion to focus more directly on the requisite intent for a due process violation based on excessive force. The jury was instructed that the plaintiff must establish that there was a “use of force that was clearly excessive to the need[,] ... the excessiveness of which was ... objectively unreasonable in light of the facts and circumstances at the time.” Id. at 873. The jury was further instructed that the plaintiff must establish that the defendant “acted deliberately or with callous indifference, evidenced by an actual intent to violate plaintiffs constitutional rights or reckless disregard for his rights.” Id.
In Wilson, the plaintiff had objected that the instruction wrongfully excluded the officer’s subjective intent from the jury’s consideration. We perceived no error in this regard. We stated that, where the issue of intent is contested, “a jury may properly rely on objective factors to arrive at their determination of that intent.” Id. at 876. Notably, we also reaffirmed the pointed holdings of Anderson v. Gutschenritter, 836 F.2d 346, 349 (7th Cir.1988), and Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1094 (7th Cir. 1986), that a plaintiff must prove that the defendants “acted deliberately or with callous indifference, evidenced by an actual intent to violate [the plaintiffs] rights or reckless disregard for his rights.” Wilson, 83 F.3d at 875 (internal quotation marks omitted).
Again in Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650 (7th Cir.2012), when we confronted a situation analogous in many relevant respects to the situation before us today (jail guards extricating a detainee from his cell), we wrote:
Where, as here, force is employed in the course of resolving a disturbance, the pertinent inquiry is whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. Factors relevant to that inquiry include whether jail officials perceived a threat to their safety and the safety of other inmates, whether there was a genuine need for the application of force, whether the force used was commensurate with the need for force, the extent of any injury inflicted, and whatever efforts the officers made to temper the severity of the force they used. See also Forrest v. Prine, 620 F.3d 739, 744-45 (7th Cir.2010); Lewis v. Downey, 581 F.3d 467, 475-77 (7th Cir.2009).
Id. at 668 (additional citations omitted) (internal quotation marks omitted).
Our dissenting colleague believes that our cases have been ambiguous on the question of intent, but we see no serious ambiguity here. Our cases make clear that, although we employ the objective criteria of the Fourth Amendment as a touch *452 stone by which to measure the gravity of the defendant officer’s conduct, we also recognize, quite clearly, the need for a subjective inquiry into the defendant’s state of mind in performing the activity under scrutiny. In determining whether the defendant officer had the requisite state of mind — at least recklessness — the same criteria used to measure the defendant’s lack of care are a useful benchmark. This is because, as Titran intimated, the gravity of the offense and the requisite intent are closely linked. Titran is clear that the strength of this link under a particular set of facts may mean that the inference of intent is so strong that no further inquiry need be made. See Titran, 893 F.2d at 148 (“If the officers intentionally restrained, jolted, and roughed up Ti-tran without physical provocation from her, their behavior was unreasonable.”). But when the inference is less strong, the cases do make clear that some examination of intent is appropriate, and that the distinction makes a mechanical application of Fourth Amendment objective standards impossible. See id. at 147 (“Subtle differences between Fourth and [Fourteenth] Amendment standards are inevitable on account of this mental element.” (emphasis added)).[16]
We think at this point it is useful to pause and be certain that we have not lost sight of the basic point of Bell. Bell teaches that the central inquiry relevant in a Fourteenth Amendment case brought by a pretrial detainee is whether the state punished him — as opposed to whether it had merely held him, restricted him, or applied a measure of force in a manner consistent with and expected of constitutional restraints on liberty prior to trial. Bell was, of course, a conditions of confinement case, see supra n. 14, but it notes the necessity of determining from the facts whether there is an intent to punish.
Finally, we note that although some consideration of intent is embraced by our cases, it is limited in significant measure by the fact that it is discernable from objective considerations[17]. See Wilson, 83 F.3d at 876.
3.
With these principles in mind, we now turn to the jury instruction at issue in the case before us.
On the subject of excessive force, the jury was instructed as follows:
Excessive force means force applied recklessly that is unreasonable in light of the facts and circumstances of the time. *453 Thus, to succeed on his claim of excessive use of force, plaintiff must prove each of the following factors by a preponderance of the evidence:
(1) Defendants used force on plaintiff;
(2) Defendants’ use of force was unreasonable in light of the facts and circumstances at the time;
(3) Defendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiffs safety by failing to take reasonable measures to minimize the risk of harm to plaintiff; and
(4) Defendants’ conduct caused some harm to plaintiff.
In deciding whether one or more defendants used “unreasonable” force against plaintiff, you must consider whether it was unreasonable from the perspective of a reasonable officer facing the same circumstances that defendants faced. You must make this decision based on what defendants knew at the time of the incident, not based on what you know now.
Also, in deciding whether one or more defendants used unreasonable force and acted with reckless disregard of plaintiffs rights, you may consider such factors as:
• The need to use force;
• The relationship between the need to use force and the amount of force used;
• The extent of plaintiffs injury;
• Whether defendants reasonably believed there was a threat to the safety of staff or prisoners; and
• Any efforts made by defendants to limit the amount of force used.[ 18]
Mr. Kingsley argues that the instructions were erroneous and confusing because he was required to establish that the officers had acted with “reckless disregard” for his safety when the instruction should have allowed the jury to find the existence of punishment on the basis of wholly objective factors.
A faithful adherence to the case law that we have discussed precludes our accepting this contention. As we have noted earlier, our cases are clear that the existence of intent — at least recklessness — is a requirement in Fourteenth Amendment excessive force cases. The court’s instruction reflected this requirement in our case law. The jury was told specifically that, in determining whether the intent element is satisfied, that is, whether the defendants “acted with reckless disregard of plaintiffs rights,” it “may consider” a non-exhaustive list of five factors, drawn almost verbatim from Wilson. In short, the instruction required a level of intent at least equivalent to recklessness, measured largely by the objective factors that we already have identified.[19]
The jury was instructed adequately on the elements of Mr. Kingsley’s Fourteenth Amendment cause of action.[20]
*454 B.
Mr. Kingsley next submits that the district court erred in instructing the jury on the issue of harm. He contends that he should not have been required to demonstrate harm at all and, if harm is an element, that the use of a taser establishes the requisite injury as a matter of law. For this latter proposition, Mr. Kingsley relies on Lewis v. Downey, 581 F.3d 467, 475 (7th Cir.2009), in which we held that use of a taser qualified as more than a de minimis application of force. In the alternative, he argues that, even if the harm instruction itself were proper, the jury should not have been further instructed that “[a] person can be harmed even if he did not suffer a severe injury”[21] In his view, this clarifying instruction only confused the matter by “allowing] the jury to consider whether the use of the taser on Mr. Kingsley met some threshold standard of injury to qualify as harm.”[22] The defendants counter that the plaintiff waived any objection and that, in any event, the instruction as given was not erroneous.
1.
We begin with the question of waiver. At trial, Mr. Kingsley did object to the inclusion of harm as an element of the excessive force claim. Our reading of the transcript makes clear, however, that his objection was that, because the defendants repeatedly had contended that there had been no lasting injury the inclusion of the element of harm might be misread as requiring more than de minimis harm. Counsel for Mr. Kingsley therefore requested a clarifying instruction that “pain is considered harm.”[23] The court simply stated, “I think I’ll add ‘a person can be harmed even if he does not suffer a lasting injury or....’ ”[24] At this point, plaintiffs counsel interjected, “Or severe injury”[25]
Although Mr. Kingsley objected to the inclusion of “harm” as an element, counsel described the objection as concern that the inclusion of “harm” might be construed erroneously by the jury to require some lasting injury. Notably, counsel stated: “[W]e submit that in the Seventh Circuit, injury isn’t a required element of an excessive force claim. I think the use of harm is an element.”[26] Counsel specifically further told the court that “[fit’s just the extent that [the defendants are] going to argue and there will be any suggestion to the jury that some form of lasting injury is required under the law, that’s what we would have the objection to.”[27]
*455 We do not discern on the record any argument presented to the district court that harm itself is not an element of the cause of action or that tasing constitutes harm per se. Consequently we must agree that Mr. Kingsley’s current position on the question of harm itself, or harm per se, has been forfeited.
2.
We now turn to the question whether the district court’s clarifying instruction introduced confusion by suggesting to the jury that some unspecified level of injury was required to establish harm. The transcript makes clear that, after voicing the objection to the inclusion of harm and stating that it was out of concern that the defendants would argue need for a lasting injury, counsel for Mr. Kingsley participated in the modification of the instruction and specifically suggested the inclusion of the “[o]r severe injury” language that ultimately was given by the district court to ameliorate the concerns raised in the prior objection. In short, the clarifying instruction was offered at Mr. Kings-ley’s request, and for the very purpose of minimizing any risk that the jury would construe harm as a significant injury. Mr. Kingsley’s counsel actively participated with the district court in achieving an instruction that would be satisfactory in that regard and did not continue an objection to the language as presenting further difficulty or insist on a more specific instruction that any amount of pain qualified as harm. Accordingly, the current objection is waived.
In any event, even if the merits of these objections were properly before us, we previously have approved an instruction in this context that included a requirement of “some harm.” See Wilson, 83 F.3d at 876. Although it would not have been error for the district court to define injury in a taser case in terms of pain, see Lewis, 581 F.3d at 475; see also Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the instruction given by the district court adequately permitted counsel to argue that the pain inflicted fulfilled the injury requirement of the cause of action. Indeed, counsel so argued.
There was no reversible error with respect to the requirement of a showing of “harm” in this case.
Conclusion
Because the jury instructions were neither erroneous nor confusing statements of the law of this circuit, the judgment in favor of the defendants is affirmed.
AFFIRMED

. Apparently, covering the lights with paper is a common practice by inmates in an effort to dim some of the brightness of the jail's lights.

. R.27 at 7.

. The record contains several videos, including one of the transfer and one of the incident in the receiving cell. However, the district court found them of limited value on the disputed points because the camera angle is such that Mr. Kingsley is nearly entirely blocked by the defendants.

. Mr. Kingsley claims Sgt. Hendrickson ordered Deputy Degner to "[t]ase his ass.” R.157 at 52. The defendants deny that these words were used but agree that Sgt. Hendrickson told Deputy Degner to apply the taser in contact stun mode to Mr. Kingsley.

. Following the incident, Mr. Kingsley was given a major violation report showing four rule violations. The events surrounding the issuance of that report and the consequences were a part of Mr. Kingsley’s procedural due process claim, which is not at issue in this appeal.

. He brought the federal claims under 42 U.S.C. § 1983. A state law claim for assault and battery initially was presented as well. That claim is not at issue in this appeal.

. R.69 at 12.

. Id. at 7.

. Id. at 14 (emphasis added).

. R.146 at 3-4.

. R.156 at 79.

. Id. (internal quotation marks omitted).

. R.146 at 4.

. As we already have noted, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), was a conditions of confinement case, not a case concerning excessive force, and the Supreme Court has not applied its rule directly in the excessive force context. However, in Graham v. Connor, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Court noted that Bell made clear the right of a detainee to be free from excessive force under the Due Process Clause.

. The Supreme Court has noted, at least in the context of the Eighth Amendment, that "punishment” itself requires " 'a deliberate act intended to chastise or deter.’ ” Wilson v. Seiter, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 *450 L.Ed.2d 271 (1991) (quoting Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir.1985)).

. The dissent also suggests that under Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the only "intent” requirement applicable in Fourteenth Amendment cases is the general requirement of intentional rather than negligent acts, necessary to impose liability for any alleged constitutional violation. The difficulty with this view is that Titran v. Ackman, 893 F.2d 145 (7th Cir.1990), and other of our cases already have held that there is something unique about the Fourteenth Amendment that imposes a burden not imposed under the Fourth Amendment.

. We acknowledge and are grateful for the fine work of the Committee that developed this circuit’s impressive Pattern Civil Jury Instructions. Nevertheless, while those instructions represent learned studies of the law of this circuit, they are persuasive only to the extent that they accurately restate the law of this circuit. See United States v. Burke, 781 F.2d 1234, 1239 n. 2 (1985) ("Although the pattern instructions are suggestive rather than absolutely binding, a decision of this court is authoritative.”). Moreover, it is not clear from the commentary to the Pattern Instruction that the issue we now confront was considered squarely. Notably, there is no mention of the above cases and the contrary language included within them.

. R.146 at 3-4.

. The dissent contends that “[t]he clearest thing about Wilson is that it reversed the use of the confusing amalgam of an instruction.” Dissent at 457. In Wilson, this court approved an instruction that tracked very closely the language used in this case, and turned on ‘‘whether the prohibited punitive intent was present.” Wilson v. Williams, 83 F.3d 870, 877 (7th Cir.1996). It reversed only on another element, completely absent from our present instruction, of a "good faith” defense. Id.

.The dissent also contends that the instruction was confusing not only because it introduced the extraneous concept of intent, but also because it did so in three separate and quite different ways. See dissent at 459-60. We think this overstates the point and overly parses the instruction, which is not our settled approach on review of such matters. True enough, the instruction uses the term *454 "reckless” three times, in three separate phrases. Its first use, that the "force [must have been] applied recklessly” merely tracks the usage that the dissent essentially admits is legally proper; that is, it says that the force must be applied in a manner displaying more culpability than negligence (i.e., the taser did not go "off by accident,” id. at 461). The evidence admittedly did not suggest that it had, but no reasonable juror would have been confused as to the meaning under the circumstances. The second usage is less clear, but the surrounding context cures any confusion. Although the jury is asked to determine if the defendants "recklessly disregarded plaintiff's safety” — a less than ideal phraseology it is then told precisely how to determine it, by whether they had "failed to take reasonable measures to minimize harm to the plaintiff.” The final usage is part of the phrase which introduces the uncontroversial objective considerations.

. R.146 at 4.

. Appellant’s Br. 20.

. R.156 at 79.

. Id.

. Id.

. Id. at 78 (emphasis added).

. Id. at 79 (emphasis added).