(Slip Opinion) OCTOBER TERM, 2014 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KINGSLEY *v.* HENDRICKSON ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 14–6368.   Argued April 27, 2015—Decided  June 22, 2015

While petitioner Kingsley was awaiting trial in county jail, officers forcibly removed him from his cell when he refused to comply with their instructions.  Kingsley filed a complaint in Federal District Court claiming, as relevant here, that two of the officers used excessive force against him in violation of the Fourteenth Amendment's Due Process Clause.  At the trial's conclusion, the District Court instructed the jury that Kingsley was required to prove, *inter alia*, that the officers "recklessly disregarded [Kingsley's] safety" and "acted with reckless disregard of [his] rights."  The jury found in the officers' favor.  On appeal, Kingsley argued that the jury instruction did not adhere to the proper standard for judging a pretrial detainee's excessive force claim, namely, objective unreasonableness.  The Seventh Circuit disagreed, holding that the law required a subjective inquiry into the officers' state of mind, *i.e.,* whether the officers actually intended to violate, or recklessly disregarded, Kingsley's rights.

*Held*:

   1.  Under 42 U. S. C. §1983, a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim.  Pp. 5–13.

   (a) This determination must be made from the perspective of a reasonable officer on the scene, including what the officer knew at the time, see *Graham* v. *Connor,* 490 U. S. 386, 396, and must account for the "legitimate interests [stemming from the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security," *Bell* v. *Wolfish*, 441 U. S. 520, 540, 547. Pp. 5–7.

Syllabus

(b) Several considerations lead to this conclusion. An objective standard is consistent with precedent. In *Bell*, for instance, this Court held that a pretrial detainee could prevail on a claim that his due process rights were violated by providing only objective evidence that the challenged governmental action was not rationally related to a legitimate governmental objective or that it was excessive in relation to that purpose. 441 U. S., at 541–543. Cf. *Block* v. *Rutherford*, 468 U. S. 576, 585–586. Experience also suggests that an objective standard is workable. It is consistent with the pattern jury instructions used in several Circuits, and many facilities train officers to interact with detainees as if the officers' conduct is subject to objective reasonableness. Finally, the use of an objective standard adequately protects an officer who acts in good faith, *e.g.,* by acknowledging that judging the reasonableness of the force used from the perspective and with the knowledge of the defendant officer is an appropriate part of the analysis. Pp. 7–10.

(c) None of the cases respondents point to provides significant support for a subjective standard. *Whitley* v. *Albers*, 475 U. S. 312, and *Hudson* v. *McMillian*, 503 U. S. 1, lack relevance in this context because they involved claims brought by convicted prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause, not claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause. And in *County of Sacramento* v. *Lewis*, 523 U. S. 833, a statement indicating the need to show "purpose to cause harm," *id.,* at 854, for due process liability refers not to whether the force intentionally used was excessive, but whether the defendant intended to commit the acts in question, *id.,* at 854, and n. 13. Finally, in *Johnson* v. *Glick*, 481 F. 2d 1028 (CA2), a malicious-and-sadistic-purpose-to-cause-harm factor was not suggested as a *necessary* condition for liability, but as a factor, among others, that might help show that the use of force was excessive. Pp. 10–13.

2. Applying the proper standard, the jury instruction was erroneous. Taken together, the features of that instruction suggested that the jury should weigh respondents' subjective reasons for using force and subjective views about the excessiveness of that force. Respondents' claim that, irrespective of this Court's holding, any error in the instruction was harmless is left to the Seventh Circuit to resolve on remand. Pp. 13–14.

744 F. 3d 443, vacated and remanded.

BREYER, J., delivered the opinion of the Court, in which KENNEDY, GINSBURG, SOTOMAYOR, and KAGAN, JJ., joined. SCALIA, J., filed a dissenting opinion, in which ROBERTS, C. J., and THOMAS, J., joined. ALITO, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 14–6368

## MICHAEL B. KINGSLEY, PETITIONER *v.* STAN HENDRICKSON, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[June 22, 2015]

JUSTICE BREYER delivered the opinion of the Court.

In this case, an individual detained in a jail prior to trial brought a claim under Rev. Stat. §1979, 42 U. S. C. §1983, against several jail officers, alleging that they used excessive force against him, in violation of the Fourteenth Amendment's Due Process Clause. The officers concede that they intended to use the force that they used. But the parties disagree about whether the force used was excessive.

The question before us is whether, to prove an excessive force claim, a pretrial detainee must show that the officers were *subjectively* aware that their use of force was unreasonable, or only that the officers' use of that force was *objectively* unreasonable. We conclude that the latter standard is the correct one.

## I

### A

Some but not all of the facts are undisputed: Michael Kingsley, the petitioner, was arrested on a drug charge and detained in a Wisconsin county jail prior to trial. On the evening of May 20, 2010, an officer performing a cell

check noticed a piece of paper covering the light fixture above Kingsley's bed. The officer told Kingsley to remove it; Kingsley refused; subsequently other officers told Kingsley to remove the paper; and each time Kingsley refused. The next morning, the jail administrator, Lieutenant Robert Conroy, ordered Kingsley to remove the paper. Kingsley once again refused. Conroy then told Kingsley that officers would remove the paper and that he would be moved to a receiving cell in the interim.

Shortly thereafter, four officers, including respondents Sergeant Stan Hendrickson and Deputy Sheriff Fritz Degner, approached the cell and ordered Kingsley to stand, back up to the door, and keep his hands behind him. When Kingsley refused to comply, the officers handcuffed him, forcibly removed him from the cell, carried him to a receiving cell, and placed him face down on a bunk with his hands handcuffed behind his back.

The parties' views about what happened next differ. The officers testified that Kingsley resisted their efforts to remove his handcuffs. Kingsley testified that he did not resist. All agree that Sergeant Hendrickson placed his knee in Kingsley's back and Kingsley told him in impolite language to get off. Kingsley testified that Hendrickson and Degner then slammed his head into the concrete bunk—an allegation the officers deny.

The parties agree, however, about what happened next: Hendrickson directed Degner to stun Kingsley with a Taser; Degner applied a Taser to Kingsley's back for approximately five seconds; the officers then left the handcuffed Kingsley alone in the receiving cell; and officers returned to the cell 15 minutes later and removed Kingsley's handcuffs.

## B

Based on these and related events, Kingsley filed a §1983 complaint in Federal District Court claiming

(among other things) that Hendrickson and Degner used excessive force against him, in violation of the Fourteenth Amendment's Due Process Clause. The officers moved for summary judgment, which the District Court denied, stating that "a reasonable jury could conclude that [the officers] acted with malice and intended to harm [Kingsley] when they used force against him." *Kingsley* v. *Josvai*, No. 10–cv–832–bbc (WD Wis., Nov. 16, 2011), App to Pet. for Cert. 66a–67a. Kingsley's excessive force claim accordingly proceeded to trial. At the conclusion of the trial, the District Court instructed the jury as follows:

> "Excessive force means force *applied recklessly* that is unreasonable in light of the facts and circumstances of the time. Thus, to succeed on his claim of excessive use of force, plaintiff must prove each of the following factors by a preponderance of the evidence:

> "(1) Defendants used force on plaintiff;

> "(2) Defendants' use of force was unreasonable in light of the facts and circumstances at the time;

> "(3) Defendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiff's safety by failing to take reasonable measures to minimize the risk of harm to plaintiff; and

> "(4) Defendants' conduct caused some harm to plaintiff.

> "In deciding whether one or more defendants used 'unreasonable' force against plaintiff, you must consider whether it was unreasonable from the perspective of a reasonable officer facing the same circumstances that defendants faced. You must make this decision based on what defendants knew at the time of the incident, not based on what you know now.

"Also, in deciding whether one or more defendants used unreasonable force and acted with *reckless disregard of plaintiff's rights*, you may consider factors such as:

"· The need to use force;

"· The relationship between the need to use force and the amount of force used;

"· The extent of plaintiff's injury;

"· Whether defendants reasonably believed there was a threat to the safety of staff or prisoners; and

"· Any efforts made by defendants to limit the amount of force used." App. 277–278 (emphasis added).

The jury found in the officers' favor.

On appeal, Kingsley argued that the correct standard for judging a pretrial detainee's excessive force claim is objective unreasonableness. And, the jury instruction, he said, did not hew to that standard. A panel of the Court of Appeals disagreed, with one judge dissenting. The majority held that the law required a "subjective inquiry" into the officer's state of mind. There must be "'an actual intent to violate [the plaintiff's] rights or reckless disregard for his rights.'" 744 F. 3d 443, 451 (CA7 2014) (quoting *Wilson* v. *Williams*, 83 F. 3d 870, 875 (CA7 1996)). The dissent would have used instructions promulgated by the Committee on Pattern Civil Jury Instructions of the Seventh Circuit, which require a pretrial detainee claiming excessive force to show only that the use of force was objectively unreasonable. 744 F. 3d, at 455 (opinion of Hamilton, J.); see Pattern Civ. Jury Instr. §7.08 (2009). The dissent further stated that the District Court's use of the word "reckless" in the jury instruction added "an unnecessary and confusing element." 744 F. 3d, at 455.

Kingsley filed a petition for certiorari asking us to determine whether the requirements of a §1983 excessive force claim brought by a pretrial detainee must satisfy the subjective standard or only the objective standard. In light of disagreement among the Circuits, we agreed to do so. Compare, *e.g., Murray* v. *Johnson No. 260*, 367 Fed. Appx. 196, 198 (CA2 2010); *Bozeman* v. *Orum*, 422 F. 3d 1265, 1271 (CA11 2005) (*per curiam*), with *Aldini* v. *Johnson*, 609 F. 3d 858, 865–866 (CA6 2010); *Young* v. *Wolfe*, 478 Fed. Appx. 354, 356 (CA9 2012).

## II

### A

We consider a legally requisite state of mind. In a case like this one, there are, in a sense, two separate state-of-mind questions. The first concerns the defendant's state of mind with respect to his physical acts—*i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world. The second question concerns the defendant's state of mind with respect to whether his use of force was "excessive." Here, as to the first question, there is no dispute. As to the second, whether to interpret the defendant's physical acts in the world as involving force that was "excessive," there is a dispute. We conclude with respect to that question that the relevant standard is objective not subjective. Thus, the defendant's state of mind is not a matter that a plaintiff is required to prove.

Consider the series of physical events that take place in the world—a series of events that might consist, for example, of the swing of a fist that hits a face, a push that leads to a fall, or the shot of a Taser that leads to the stunning of its recipient. No one here denies, and we must assume, that, as to the series of events that have taken place in the world, the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind. That is because, as we have stated, "liability for *negligently* inflicted harm

is categorically beneath the threshold of constitutional due process." *County of Sacramento* v. *Lewis*, 523 U. S. 833, 849 (1998) (emphasis added). See also *Daniels* v. *Williams*, 474 U. S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property"). Thus, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim. But if the use of force is deliberate—*i.e.,* purposeful or knowing—the pretrial detainee's claim may proceed. In the context of a police pursuit of a suspect the Court noted, though without so holding, that recklessness in some cases might suffice as a standard for imposing liability. See *Lewis*, *supra,* at 849. Whether that standard might suffice for liability in the case of an alleged mistreatment of a pretrial detainee need not be decided here; for the officers do not dispute that they acted purposefully or knowingly with respect to the force they used against Kingsley.

We now consider the question before us here—the defendant's state of mind with respect to the proper *interpretation* of the force (a series of events in the world) that the defendant deliberately (not accidentally or negligently) used. In deciding whether the force deliberately used is, constitutionally speaking, "excessive," should courts use an objective standard only, or instead a subjective standard that takes into account a defendant's state of mind? It is with respect to *this* question that we hold that courts must use an objective standard. In short, we agree with the dissenting appeals court judge, the Seventh Circuit's jury instruction committee, and Kingsley, that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.

A court (judge or jury) cannot apply this standard mechanically. See *Lewis*, *supra,* at 850. Rather, objective

reasonableness turns on the "facts and circumstances of each particular case." *Graham* v. *Connor*, 490 U. S. 386, 396 (1989). A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. See *ibid*. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell* v. *Wolfish*, 441 U. S. 520, 540, 547 (1979).

Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. See, *e.g., Graham, supra*, at 396. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

B

Several considerations have led us to conclude that the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one. For one thing, it is consistent with our precedent. We have said that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham, supra*, at 395, n. 10. And in *Bell*, we explained that such "punishment" can consist of actions taken with an "expressed intent to punish." 441 U. S., at 538. But the

*Bell* Court went on to explain that, in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose." *Id.*, at 561. The *Bell* Court applied this latter objective standard to evaluate a variety of prison conditions, including a prison's practice of double-bunking. In doing so, it did not consider the prison officials' subjective beliefs about the policy. *Id.*, at 541–543. Rather, the Court examined objective evidence, such as the size of the rooms and available amenities, before concluding that the conditions were reasonably related to the legitimate purpose of holding detainees for trial and did not appear excessive in relation to that purpose. *Ibid.*

*Bell*'s focus on "punishment" does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated. Rather, as *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose. Cf. *Block* v. *Rutherford*, 468 U. S. 576, 585–586 (1984) (where there was no suggestion that the purpose of jail policy of denying contact visitation was to punish inmates, the Court need only evaluate whether the policy was "reasonably related to legitimate governmental objectives" and whether it appears excessive in relation to that objective); *Schall* v. *Martin*, 467 U. S. 253, 269–271 (1984) (similar); see also *United States* v. *Salerno*, 481 U. S. 739, 747 (1987) ("[T]he punitive/regulatory distinction *turns on* 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]'" (quot-

ing *Schall*, *supra*, at 269; emphasis added and some internal quotation marks omitted)). The Court did not suggest in any of these cases, either by its words or its analysis, that its application of *Bell*'s objective standard should involve subjective considerations. Our standard is also consistent with our use of an objective "excessive force" standard where officers apply force to a person who, like Kingsley, has been accused but not convicted of a crime, but who, unlike Kingsley, is free on bail. See *Graham*, *supra*.

For another thing, experience suggests that an objective standard is workable. It is consistent with the pattern jury instructions used in several Circuits. We are also told that many facilities, including the facility at issue here, train officers to interact with all detainees as if the officers' conduct is subject to an objective reasonableness standard. See Brief for Petitioner 26; App. 247–248; Brief for Former Corrections Administrators and Experts as *Amici Curiae* 8–18.

Finally, the use of an objective standard adequately protects an officer who acts in good faith. We recognize that "[r]unning a prison is an inordinately difficult undertaking," *Turner* v. *Safley*, 482 U. S. 78, 84–85 (1987), and that "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face," *Florence* v. *Board of Chosen Freeholders of County of Burlington*, 566 U. S. \_\_\_, \_\_\_ (2012) (slip op., at 5). Officers facing disturbances "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U. S., at 397. For these reasons, we have stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer. We have also explained that a court must take account of the legitimate interests in managing a jail,

acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate. See Part II–A, *supra.* And we have limited liability for excessive force to situations in which the use of force was the result of an intentional and knowing act (though we leave open the possibility of including a "reckless" act as well). *Ibid.* Additionally, an officer enjoys qualified immunity and is not liable for excessive force unless he has violated a "clearly established" right, such that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier* v. *Katz*, 533 U. S. 194, 202 (2001); see also Brief for United States as *Amicus Curiae* 27–28. It is unlikely (though theoretically possible) that a plaintiff could overcome these hurdles where an officer acted in good faith.

C

Respondents believe that the relevant legal standard should be subjective, *i.e.,* that the plaintiff must prove that the use of force was not "applied in a good-faith effort to maintain or restore discipline" but, rather, was applied "maliciously and sadistically to cause harm." Brief for Respondents 27. And they refer to several cases that they believe support their position. See *id.,* at 26–31 (citing *Whitley* v. *Albers*, 475 U. S. 312 (1986); *Hudson* v. *McMillian*, 503 U. S. 1 (1992); *Lewis*, 523 U. S. 833; *Johnson* v. *Glick*, 481 F. 2d 1028 (CA2 1973)).

The first two of these cases, however, concern excessive force claims brought by convicted prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause, not claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause. *Whitley*, *supra*, at 320; *Hudson*, *supra*, at 6–7. The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike

convicted prisoners) cannot be punished at all, much less "maliciously and sadistically." *Ingraham* v. *Wright*, 430 U. S. 651, 671–672, n. 40 (1977); *Graham*, *supra*, at 395, n. 10 (1989); see also 4 W. Blackstone, Commentaries \*300 ("[I]f the offence be not bailable, or the party cannot find bail, he is to be committed to the county [jail] . . . [b]ut . . . only for safe custody, and not for punishment"). Thus, there is no need here, as there might be in an Eighth Amendment case, to determine when punishment is unconstitutional. *Whitley* and *Hudson* are relevant here only insofar as they address the practical importance of taking into account the legitimate safety-related concerns of those who run jails. And, as explained above, we believe we have done so.

*Lewis* does not prove respondents' point, either. There, the Court considered a claim that a police officer had violated due process by causing a death during a high-speed automobile chase aimed at apprehending a suspect. We wrote that "[j]ust as a purpose to cause harm is needed for Eighth Amendment liability in a [prison] riot case, so it ought to be needed for due process liability in a pursuit case." 523 U. S*.,* at 854. Respondents contend that this statement shows that the Court embraced a standard for due process claims that requires a showing of subjective intent. Brief for Respondents 30–31. Other portions of the *Lewis* opinion make clear, however, that this statement referred to the defendant's intent to commit the *acts* in question, not to whether the force intentionally used was "excessive." 523 U. S., at 854, and n. 13. As explained above, the parties here do not dispute that respondents' use of force was intentional. See Part II–A, *supra*.

Nor does *Glick* provide respondents with significant support. In that case Judge Friendly, writing for the Second Circuit, considered an excessive force claim brought by a pretrial detainee under the Fourteenth

Amendment's Due Process Clause.  Judge Friendly pointed out that the "management by a few guards of large numbers of prisoners" in an institution "may require and justify the occasional use of a degree of intentional force."  481 F. 2d, at 1033.  He added that, in determining whether that intentional use of force "crosse[s]" the "constitutional line," a court should look:

> "to such factors as [(1)] the need for the application of force, [(2)] the relationship between the need and the amount of force that was used, [(3)] the extent of injury inflicted, and [(4)] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Ibid.*

This statement does not suggest that the fourth factor (malicious and sadistic purpose to cause harm) is a *necessary* condition for liability.  To the contrary, the words "such . . . as" make clear that the four factors provide examples of some considerations, among others, that might help show that the use of force was excessive.

Respondents believe these cases nonetheless help them make a broader point—namely, that a subjective standard "protects against a relative flood of claims," many of them perhaps unfounded, brought by pretrial detainees.  Brief for Respondents 38.  But we note that the Prison Litigation Reform Act of 1995, 42 U. S. C. §1997e, which is designed to deter the filing of frivolous litigation against prison officials, applies to both pretrial detainees and convicted prisoners.  Nor is there evidence of a rash of unfounded filings in Circuits that use an objective standard.

We acknowledge that our view that an objective standard is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment may raise questions about the use of a subjective standard in the context of excessive force claims

brought by convicted prisoners. We are not confronted with such a claim, however, so we need not address that issue today.

## III

We now consider the lawfulness of the jury instruction given in this case in light of our adoption of an objective standard for pretrial detainees' excessive force claims. See Part II–A, *supra.* That jury instruction defined "excessive force" as "force applied recklessly that is unreasonable in light of the facts and circumstances of the time." App. 277. It required Kingsley to show that the officers "recklessly disregarded [Kingsley's] safety." *Id.,* at 278. And it suggested that Kingsley must show the defendants "acted with reckless disregard of [Kingsley's] rights," while telling the jury that it could consider several objective factors in making this determination. *Ibid.*

Kingsley argues that the jury instruction is faulty because the word "reckless" suggests a need to prove that respondents acted with a certain subjective state of mind with respect to the excessive or nonexcessive nature of the force used, contrary to what we have just held. Reply Brief 20–22. Respondents argue that irrespective of our holding, any error in the instruction was harmless. Brief for Respondents 57–58. And the Solicitor General suggests that, because the instructions defined "recklessness" with reference to objective factors, those instructions effectively embody our objective standard and did not confuse the jury. Brief for United States as *Amicus Curiae* 28–32.

We agree with Kingsley that the instructions were erroneous. "[R]eckles[s] disregar[d] [of Kingsley's] safety" was listed as an additional requirement, beyond the need to find that "[respondents'] use of force was unreasonable in light of the facts and circumstances at the time." App. 278. See also *ibid.* (Kingsley had to show respondents

"used unreasonable force *and* acted with reckless disregard of [Kingsley's] rights" (emphasis added)). And in determining whether respondents "acted with reckless disregard of [Kingsley's] rights," the jury was instructed to "consider . . . [w]hether [respondents] reasonably *believed* there was a threat to the safety of staff or prisoners." *Ibid.* (emphasis added). Together, these features suggested the jury should weigh respondents' subjective reasons for using force and subjective views about the excessiveness of the force. As we have just held, that was error. But because the question whether that error was harmless may depend in part on the detailed specifics of this case, we leave that question for the Court of Appeals to resolve in the first instance.

The decision of the Court of Appeals is vacated, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 14–6368

MICHAEL B. KINGSLEY, PETITIONER *v.* STAN HENDRICKSON, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[June 22, 2015]

JUSTICE SCALIA, with whom THE CHIEF JUSTICE and JUSTICE THOMAS join, dissenting.

The Constitution contains no freestanding prohibition of excessive force. There are, however, four constitutional provisions that we have said forbid the use of excessive force in certain circumstances. The Fourth Amendment prohibits it when it makes a search or seizure "unreasonable." The Eighth Amendment prohibits it when it constitutes "cruel and unusual" punishment. The Fifth and Fourteenth Amendments prohibit it (or, for that matter, any use of force) when it is used to "deprive" someone of "life, liberty, or property, without due process of law."

This is a Fourteenth Amendment case. The Fifth Amendment applies only to federal actors; Kingsley forfeited any argument under the Fourth Amendment by failing to raise it below; and he acknowledges that the Eighth Amendment standard is inapplicable, Brief for Petitioner 27, n. 8. The only question before us is whether a pretrial detainee's due process rights are violated when "the force purposely or knowingly used against him [is] objectively unreasonable." *Ante,* at 6. In my view, the answer is no. Our cases hold that the intentional infliction of punishment upon a pretrial detainee may violate the Fourteenth Amendment; but the infliction of "objectively unreasonable" force, without more, is not the inten-

tional infliction of punishment.

In *Bell* v. *Wolfish*, 441 U. S. 520 (1979), we held that the Due Process Clause forbids holding pretrial detainees in conditions that "amount to punishment." *Id.,* at 535. Conditions amount to punishment, we explained, when they are "imposed for the purpose of punishment." *Id.,* at 538. Acting with the intent to punish means taking a "'deliberate act intended to chastise or deter.'" *Wilson* v. *Seiter*, 501 U. S. 294, 300 (1991) (quoting *Duckworth* v. *Franzen*, 780 F. 2d 645, 652 (CA7 1985)); see also *Bell*, *supra*, at 537–538. The Court in *Bell* recognized that intent to punish need not be "expressed," 441 U. S. at 538, but may be established with circumstantial evidence. More specifically, if the condition of confinement being challenged "is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment." *Id.,* at 539. We endorsed the same inference when we applied *Bell*'s intent-to-punish test in challenges brought by pretrial detainees against jailhouse security policies, *id.,* at 560–562; *Block* v. *Rutherford*, 468 U. S. 576, 583–584 (1984), and statutes permitting pretrial detention, *Schall* v. *Martin*, 467 U. S. 253, 255, 269 (1984); *United States* v. *Salerno*, 481 U. S. 739, 741, 746–747 (1987).

In light of these cases, I agree with the Court that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham* v. *Connor*, 490 U. S. 386, 395, n. 10 (1989) (citing *Bell*, *supra*, at 535–539). I disagree, however, that any intentional application of force that is objectively unreasonable in degree is a use of excessive force that "amount[s] to punishment." *Bell*, 441 U. S., at 535. The Court reaches that conclusion by misreading *Bell* as forbidding States to take *any* harmful action against pretrial detainees that is not "reasonably related to a legitimate

goal." *Id.,* at 539.

*Bell* endorsed this "reasonable relation" inference in the context of a challenge *to conditions of a confinement*— specifically, challenges to the State's policy of housing two people in each cell, *id.,* at 528, and various security policies, *id.,* at 548–549, 553, 555, 558, 560–562. The conditions in which pretrial detainees are held, and the security policies to which they are subject, are the result of considered deliberation by the authority imposing the detention. If those conditions and policies lack any reasonable relationship to a legitimate, nonpunitive goal, it is logical to infer a punitive intent. And the same logic supports finding a punitive intent in statutes authorizing detention that lacks any reasonable relationship to a valid government interest. *Schall*, *supra*, at 269; *Salerno*, *supra*, at 746–747.

It is *illogical*, however, automatically to infer punitive intent from the fact that a prison guard used more force against a pretrial detainee than was necessary. That could easily have been the result of a misjudgment about the degree of force required to maintain order or protect other inmates, rather than the product of an intent to punish the detainee for his charged crime (or for any other behavior). An officer's decision regarding how much force to use is made "in haste, under pressure, and frequently without the luxury of a second chance," *Hudson* v. *Mc-Millian*, 503 U. S. 1, 6 (1992) (internal quotation marks omitted), not after the considered thought that precedes detention-policy determinations like those at issue in *Bell*, *Block*, *Schall*, and *Salerno*. That an officer used more force than necessary might be *evidence* that he acted with intent to punish, but it is no more than that.

In sum: *Bell* makes intent to punish the focus of its due-process analysis. Objective reasonableness of the force used is nothing more than a heuristic for identifying this intent. That heuristic makes good sense for considered

decisions by the detaining authority, but is much weaker in the context of excessive-force claims. Kingsley does not argue that respondents actually intended to punish him, and his reliance on *Bell* to infer such an intent is misplaced.

Kingsley claims that "the protections of due process . . . extend beyond the narrow context of 'punishment.'" Brief for Petitioner 15. Unquestionably. A State would plainly violate the Due Process Clause if it extended a detainee's confinement because it believed him mentally ill (not as "punishment"), without giving him the constitutionally guaranteed processes that must precede the deprivation of liberty. But Kingsley does not claim deprivation of liberty in that normal sense of that word—the right to walk about free. He claims that the Due Process Clause confers, on pretrial detainees, a substantive "liberty" interest that consists of freedom from objectively unreasonable force. Kingsley seeks relief, in other words, under the doctrine of "substantive due process," through which we have occasionally recognized "liberty" interests other than freedom from incarceration or detention, that "cannot be limited at all, except by provisions that are 'narrowly tailored to serve a compelling state interest.'" *Kerry* v. *Din, ante,* at 6 (plurality opinion) (quoting *Reno* v. *Flores*, 507 U. S. 292, 301–302 (1993)).

Even if one believed that the right to process can confer the right to substance in particular cases, Kingsley's interest is not one of the "fundamental liberty interests" that substantive due process protects. We have said that that doctrine protects only those liberty interests that, carefully described, are "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington* v. *Glucksberg*, 521 U. S. 702, 720–721 (1997) (citations and internal quotation marks omitted). Carefully described,

the liberty interest Kingsley asserts is the right of pretrial detainees to be free from the application of force that is more than is objectively required to further some legitimate, nonpunitive, governmental interest. He does not argue (nor could he) that this asserted interest could pass the test announced in *Glucksberg*.

I conclude by emphasizing that our Constitution is not the only source of American law. There is an immense body of state statutory and common law under which individuals abused by state officials can seek relief. Kingsley himself, in addition to suing respondents for excessive force under 42 U. S. C. §1983, brought a state-law claim for assault and battery. 744 F. 3d 443, 446, n. 6 (CA7 2014). The Due Process Clause is not "a font of tort law to be superimposed upon" that state system. *Daniels* v. *Williams*, 474 U. S. 327, 332 (1986) (quoting *Paul* v. *Davis*, 424 U. S. 693, 701 (1976)). Today's majority overlooks this in its tender-hearted desire to tortify the Fourteenth Amendment.

# SUPREME COURT OF THE UNITED STATES

———————

No. 14–6368

———————

## MICHAEL B. KINGSLEY, PETITIONER *v.* STAN HENDRICKSON, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[June 22, 2015]

JUSTICE ALITO, dissenting.

I would dismiss this case as improvidently granted. Before deciding what a pretrial detainee must show in order to prevail on a due process excessive force claim, we should decide whether a pretrial detainee can bring a Fourth Amendment claim based on the use of excessive force by a detention facility employee. We have not yet decided that question. See *Graham* v. *Connor*, 490 U. S. 386, 395, n. 10 (1989). If a pretrial detainee can bring such a claim, we need not and should not rely on substantive due process. See *Albright* v. *Oliver*, 510 U. S. 266, 273 (1994) (plurality opinion); *Graham*, 490 U. S., at 395. It is settled that the test for an unreasonable seizure under the Fourth Amendment is objective, see *id.,* at 397, so if a pretrial detainee can bring such a claim, it apparently would be indistinguishable from the substantive due process claim that the Court discusses.

I would not decide the due process issue presented in this case until the availability of a Fourth Amendment claim is settled, and I would therefore dismiss this case as improvidently granted.