GRABER, Circuit Judge,
concurring in part and dissenting in part:
I join the majority opinion, with the exception of Part II.D.2. I respectfully dissent from the holding that there was insufficient evidence from which the jury could have concluded that the entity Defendants were deliberately indifferent to the risk that Plaintiff would be harmed by a fellow inmate. I also write separately because the Supreme Court’s recent decision in Kingsley v. Hendrickson, — U.S. -, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), calls into question our precedent on the appropriate state-of-mind inquiry in failure-to-protect claims brought by pretrial detainees.
A. • The entity Defendants had actual knowledge of state regulations governing their conduct and were deliberately indifferent.
In Farmer v. Brennan, 511 U.S. 825, 841, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court acknowledged that “considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as *678 distinct from that of a governmental official.” [1] This case squarely presents that considerable conceptual difficulty.
We previously have acknowledged that certain types of evidence could show that an entity possesses subjective knowledge:
First, it is certainly possible that a municipality’s policies explicitly acknowledge that substantial risks of serious harm exist. Second, numerous cases have held that municipalities act through their policymakers, who are, of course, natural persons, whose state of mind can be determined.
Gibson v. County of Washoe, 290 F.3d 1175, 1188 n. 10 (9th Cir.2002). But those two types of evidence are not the only way to show such knowledge. Here, as the majority explains, state regulations applicable to the County anticipated the precise harm that befell Plaintiff and required a particular audio-monitoring system to prevent that harm. Moreover, the County affirmatively adopted those same regulations into its municipal code. I would hold, as a matter of law, that entities have actual knowledge of (1) laws that they enact, including those adopted by incorporation, and (2) state regulations governing their conduct.
At the time of the attack in this case, the Los Angeles County Code “adopted by reference and incorporated into ... the Los Angeles County Code as if fully set forth below” certain chapters of the California Building Code, including chapter 12, which includes the regulation requiring that sobering cells be equipped with an audio-monitoring system.[2] L.A. County Code, tit. 26, ch. 1, § 100 (2007). The County Board of Supervisors’ affirmative adoption of a regulation aimed at mitigating the risk to individuals housed in sobering cells is conclusive proof that the County had actual knowledge of the risk of the harm that befell Plaintiff. See Bd. of Cnty. Comm’rs v. Brown, 520 U.S. 397, 405-06, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (describing Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), and Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), as municipal liability cases involving “no difficult questions of fault” because they involved “formal decisions of municipal legislative bodies”).
But I would not require such an affirmative act to show that an entity possesses the requisite knowledge to support a finding of deliberate indifference; I also would hold, as a matter of law, that governmental entities, as distinct from individuals employed by those entities, know the statutes and regulations governing their conduct. The majority contends that such a rule impermissibly equates actual knowledge with constructive knowledge. Maj. op. at 674-75. It is true that the Supreme Court has written that, in actions against individuals and entities alike, a plaintiff must establish that the defendant possessed the “state of mind required to prove the underlying violation.” Brown, 520 U.S. at *679 405, 117 S.Ct. 1382. But I do not think that the Court meant for us to ignore salient differences between individuals and entities.
In Davis v. Scherer, 468 U.S. 183, 196, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Court held that individual officers are not deemed to have knowledge of the “voluminous, ambiguous, and contradictory” regulations governing their conduct. (Internal quotation marks omitted.) The Court explained that officers “must often act swiftly and firmly,” precluding “an extensive inquiry into ... the applicability and importance of the rule at issue” and “the possible legal consequences of their conduct.” Id. at 195-96, 104 S.Ct. 3012 (internal quotation marks omitted). That reasoning does not apply to entities, which by definition do not make the sort of time-pressured decisions that individual officers make. Moreover, because an entity does not have an actual mind, the question of what the entity “knows” is different from the question of what an individual “knows.” Cf. United States v. 7326 Highway 45 N., 965 F.2d 311, 316 (7th Cir.1992) (“As a legal fiction, a corporation cannot ‘know[1] like an individual ‘knows.’ ”).[3] In light of these differences between entities and individuals, I would hold that where, as here, positive law applicable to the entity speaks directly to the risk of harm that befell a plaintiff, the entity defendant has the requisite knowledge of that risk to disregard it deliberately.
B. Recent Supreme Court precedent calls into question our caselaw governing Fourteenth Amendment failure-to-protect claims.
As explained above, I would hold, as a matter of law, that the entity Defendants had actual knowledge of the risk to Plaintiff and were deliberately indifferent to that risk. But after the Supreme Court’s decision in Kingsley, I doubt that actual knowledge is necessary to support a finding of deliberate indifference under the Fourteenth Amendment. In my view, Kingsley undermines Clouthier v. County of Contra Costa, 591 F.3d 1232, 1243 (9th Cir.2010), in which we held that proof of such knowledge is required.[4]
A pretrial detainee’s right to be protected from harm at the hands of other inmates stems from the Due Process Clause of the Fourteenth Amendment, rather than from the Cruel and Unusual Punishment Clause of the Eighth Amendment. Gibson, 290 F.3d at 1187. Notwithstanding those different constitutional sources, in Clouthier, 591 F.3d at 1242-43, we held *680 that the Eighth and Fourteenth Amendment standards are identical for failure-to-protect claims. Accordingly, we held that the standard imposed by Farmer — which involved an Eighth Amendment claim brought by a convicted prisoner — applied to claims brought by pretrial detainees. Id. at 1242.
In Kingsley, 135 S.Ct. at 2475, the Supreme Court held that excessive force claims brought by convicted prisoners under the Eighth Amendment’s Cruel and Unusual Punishment Clause differ qualitatively from excessive force claims brought by pretrial detainees under the Fourteenth Amendment’s Due Process Clause. Under Kingsley, a pretrial detainee, unlike a convicted prisoner, need not prove that the defendant subjectively knew that the force applied was excessive; that state-of-mind inquiry is “solely ... objective.” Id. at 2473 (emphasis added).
There are important differences between excessive force and failure-to-protect claims; notably, a failure-to-protect claim does not necessarily involve an affirmative act by the defendant.[5] But there also are important similarities. Most significantly, the claims share constitutional sources; they are drawn from the Fourteenth Amendment for pretrial detainees, but from the Eighth Amendment for convicted prisoners. Therefore, the reasoning of Kingsley is in serious tension, if not outright conflict, with 'the reasoning of Clouthier. See Miller, 335 F.3d at 900 (“[T]he issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.”).
Clouthier provided a single rationale for holding that the Farmer test applied equally to Eighth and Fourteenth Amendment claims: It read Bell v. Wolfish, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), to require proof of punitive intent for failure-to-protect claims, whether those claims arise in a pretrial or a post-conviction context. Clouthier, 591 F.3d at 1241-43. But Kingsley rejected precisely that reading of Bell; although unconstitutional “‘punishment’ ” of pretrial detainees “can consist of actions taken with an ‘expressed intent to punish,’ proof of such intent is not required. Kingsley, 135 S.Ct. at 2473 (emphasis added) (quoting Bell, 441 U.S. at 538, 99 S.Ct. 1861). In evaluating the challenged prison conditions in Bell, the Court “did not consider the prison officials’ subjective beliefs about the policy. Rather, the Court examined objective evidence ... before concluding that the conditions were reasonably related to the legitimate purpose of holding detainees for trial and did not appear excessive in relation to that purpose.” Id. (citing Bell, 441 U.S. at 541-43, 99 S.Ct. 1861). Thus, Clouthier’s reading of Bell, as requiring a subjective state-of-mind inquiry with respect to awareness of the risk, cannot survive Kingsley. And because Clouthier’s only reason for applying the same test in the Eighth and Fourteenth Amendment contexts was that now-defunct reading of Bell, *681 it is questionable whether Clowthier remains good law on this point.
Moreover, Kingsley emphasized the importance of the constitutional source of the asserted right: “The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically.” 135 S.Ct. at 2475 (internal quotation marks omitted). In light of Kingsley’s focus on the differences between the relevant constitutional provisions, we ought not apply a decision grounded in the Eighth Amendment to a claim arising under the Fourteenth Amendment. Cf. Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (“We reject this notion that all excessive force claims brought under § 1983 are governed by a single generic standard. As we have said many times, § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.” (internal quotation marks omitted)). Thus, I do not think that either Clowthier or Farmer fully answers what state-of-mind inquiry is required in this case.
Because I would hold that the entity Defendants had actual knowledge of the risk to Plaintiff, Kingsley would not change the outcome that I would reach even if we were not. bound to follow Clou-thier. Both the Supreme Court and we have held that the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (citing Bell, 441 U.S. at 535 n. 16, 99 S.Ct. 1861); accord Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120, 1121 n. 11 (9th Cir.2003). Thus, proof that a defendant had actual knowledge of the risk of harm, which amounts to proof that actions were taken “with an ‘expressed intent to punish,’ ” Kingsley, 135 S.Ct. at 2473 (quoting Bell, 441 U.S. at 538, 99 S.Ct. 1861), necessarily satisfies the Fourteenth Amendment state-of-mind inquiry.
But, in my view, Kingsley strongly suggests that proof of actual knowledge of the risk is not required for a claim arising under the Fourteenth Amendment. In Kingsley, the Supreme Court explained that, in an excessive force case,
there are ... two separate state of mind questions. The first concerns the defendant’s state of mind with respect to his physical acts — ie., his state of mind with respect to the bringing about of certain physical consequences in the world. The second question concerns the defendant’s state of mind with respect to whether his use of force was “excessive.”
Id. at 2472. As to the first inquiry, the Court stated that “the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind,” because “ ‘liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.’ ” Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). By contrast, for the second inquiry, a pretrial detainee need provide “only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.” Id. at 2473-74. In the excessive force context, that step requires the plaintiff to demonstrate that the force used was “objectively unreasonable.” Id. at 2473.
Farmer sets up an analogous two-part state-of-mind inquiry for failure-to-protect claims. In order to be deemed “deliberately indifferent” to a particular risk under the Eighth Amendment, a defendant *682 must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” Farmer, 511 U.S. at 837, 114 S.Ct. 1970. Under Kingsley, the first part of the standard— requiring subjective awareness of facts giving rise to an inference of a substantial risk of serious harm- — -remains unchanged.[6] But I read Kingsley to suggest that, for claims arising under the Fourteenth Amendment, a plaintiff need only show that a reasonable person in the defendant’s shoes would draw that inference.[7]
For the foregoing reasons, I would affirm the jury’s verdict against the entity Defendants. I therefore dissent from Part II.D.2.

. As I explain in Part B, I question whether proof of subjective indifference is required in a Fourteenth Amendment case after the Supreme Court's decision in Kingsley. This section assumes, consistent with our precedent, that Farmer still applies to a claim arising under the Fourteenth Amendment.

. Even though the county code provision was not in evidence in the district court, we may take judicial notice of it because it is "not subject to reasonable dispute” and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” Fed.R.Evid. 201(b)(2); Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 (9th Cir.2006); see id. at 1026 n. 2 (holding that local ordinances are "proper subjects for judicial notice”).

. Were we writing on a blank slate, one possible resolution of the conceptual difficulty here would be to hold that entities cannot be held liable for constitutional violations when the underlying violation requires subjective intent. Indeed, the Supreme Court has taken that course in a different context. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (holding that punitive damages cannot sensibly be assessed against a governmental entity because the entity "can have no malice independent of the malice of its officials”). But that option is not open to us, because the Supreme Court clearly has stated that municipalities can have subjective knowledge and intent for the purposes of § 1983 liability. See Brown, 520 U.S. at 405, 117 S.Ct. 1382 (holding that “proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably”).

. Despite the considerable tension between Kingsley and our precedent, the conflict may not be sufficient to meet the "high bar” that would authorize our panel to depart from that precedent. Miller v. Gammie, 335 F.3d 889, 900 (9th Cir.2003) (en banc). For that reason, I do not dissent from the majority’s description of the appropriate state-of-mind inquiry for the individual defendants.

. I disagree with the majority's statement that we evaluate excessive force claims, as distinct from deliberate indifference claims, without regard to’ "whatever thoughts, knowledge, or motivation” drove the defendant’s actions. Maj. op. at 665. When a convicted prisoner brings an excessive force claim, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.” Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

. And the act or omission itself still must be intentional or possibly reckless. For example, a guard who fails to take action because he or she has suddenly fallen ill would not be deliberately indifferent.

. This case illustrates why it is important that our precedent get this issue right. Applying the post-Kingsley standard outlined in this section, the majority would reach a different conclusion regarding the entity Defendants’ liability, because we agree that the state regulations put the entity Defendants on at least constructive notice that the failure to install an inmate- or sound-actuated audio-monitoring system exposed inmates to a substantial risk of violence at the hands of other inmates. We ought to rehear this case en banc so that we can take up this important issue.