IKUTA, Circuit Judge,
with whom, CALLAHAN and BEA, Circuit Judges, join, dissenting:
I join Judge Callahan’s dissent in full, but I write separately to express my dismay that the majority has misinterpreted Kingsley v. Hendrickson, — U.S. -, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), and made a mess of the Supreme Court’s framework for determining when pretrial detainees have suffered punishment in violation of their Fourteenth Amendment due process rights.
I
A pretrial detainee has a constitutional right under the Fourteenth Amendment to be free from punishment without due process of law. Bell v. Wolfish, 441 U.S. 520, 534, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Ingraham v. Wright, 430 U.S. 651, 671 n.40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). According to Bell, when a pretrial detainee alleges a violation of a constitutional right (and does not point to a violation of any “express guarantee of the Constitution”), the only question is whether the situation at issue amounts to punishment of the detainee. 441 U.S. at 534, 99 S.Ct. 1861. This right to be free from punishment under the Due Process Clause is the only constitutional right at issue in this case; neither Castro nor the majority claims that any other constitutional right is at issue.
Under Supreme Court precedent, there are four ways for pretrial detainees to establish that they were unconstitutionally punished.
First, and most obviously, a pretrial detainee can show that a government official’s action was taken with an “expressed intent to punish.” Kingsley, 135 S.Ct. at 2473 (quoting Bell, 441 U.S. at 538, 99 S.Ct. 1861).
*1085 Second, a pretrial detainee can show that a government official’s deliberate action was objectively unreasonable. Id. at 2472-73. An objectively unreasonable action is one that is not reasonably related to the government’s legitimate interests, like interests in managing the detention facility and maintaining order. Id. at 2473. Because an objectively unreasonable action has no “legitimate nonpunitive governmental purpose,” it indicates an intent to punish. Id. (quoting Bell, 441 U.S. at 561, 99 S.Ct. 1861). A claim that an official used excessive force, rather than reasonable force necessary to maintain order, falls into this category. Id.
Third, a pretrial detainee can establish that a restriction or condition of confinement, such as a strip search requirement, is not reasonably related to a legitimate government purpose, which indicates that the purpose behind the condition is punishment. “[I]f a restriction or condition is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.” Bell, 441 U.S. at 539, 99 S.Ct. 1861.
Finally, a pretrial detainee can show that a governmental official’s failure to act constituted punishment if the detainee can establish that the official was deliberately indifferent to a substantial risk of harm. The Supreme Court has made clear that a failure to act is not punishment at all unless the government official actually knew of a substantial risk and consciously disregarded it. Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This standard follows from the “intent requirement” implicit in the word “punishment,” Wilson v. Seiter, 501 U.S. 294, 298-300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); the unintentional or accidental infliction of harm amounts at most to negligence, which is not a due process violation, Kingsley, 135 S.Ct. at 2472. We have long applied this deliberate indifference standard to claims that a government official failed to address medical needs or otherwise protect pretrial detainees. See Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1017-18 (9th Cir. 2010); Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1241-42 (9th Cir. 2010); Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Cabrales v. Cty. of Los Angeles, 864 F.2d 1454, 1461 & n. 2 (9th Cir. 1988), cert. granted, judgment vacated, 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 (1989), opinion reinstated, 886 F.2d 235 (9th Cir. 1989).
Castro’s claim falls into this last category. He alleges that a government official actually knew of a substantial risk of serious harm by putting Gonzalez in his cell and failed to protect him from that risk. As stated in Judge Callahan’s dissent, we can affirm the judgment against the individual defendants on this ground.
II
Rather than apply this well-established framework, the majority inexplicably holds that we must analyze a claim that a government official’s failure to act constituted punishment under the standard applicable to excessive force claims, relying on the Supreme Court’s recent decision in Kings-ley.
A description of Kingsley shows it is entirely inapposite. In that case, when a detainee refused to remove a piece of paper covering his light fixture, four officers handcuffed him, forcibly removed him from the cell, and applied a Taser to his back for about five seconds. 135 S.Ct. at 2470. The detainee brought an action under § 1983 claiming that the officers used excessive force against him in violation of the Fourteenth Amendment’s Due *1086 Process Clause. Id. at 2470-71. The Court held that where officers deliberately use force against a pretrial detainee, the standard to determine whether the force is excessive is an objective one. Id. at 2472-73. The detainee need not prove that the officer intended to punish; it amounts to punishment if “the force purposefully or knowingly used against him was objectively unreasonable.” Id. Kings-ley is consistent with the Supreme Court cases establishing that where the government official’s affirmative acts are shown to be “excessive in relation” to any “legitimate governmental objective,” a court “permissibly may infer” that they are punitive in nature. Bell, 441 U.S. at 537-39, 99 S.Ct. 1861.
But the Kingsley standard is not applicable to cases where a government official fails to act. As explained in Bell, in analyzing a pretrial detainee’s Fourteenth Amendment claim, the key question is whether the situation at issue amounts to a punishment of the detainee. Id. While punitive intent may be inferred from affirmative acts that are excessive in relationship to a legitimate government objective, the mere failure to act does not raise the same inference. See Farmer, 511 U.S. at 837-38, 114 S.Ct. 1970. Rather, a person who unknowingly fails to act — even when such a failure is objectively unreasonable — is negligent at most. Id. And the Supreme Court has made clear that “liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.” Kingsley, 135 S.Ct. at 2472 (citing County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).
Realizing this difficulty, the majority fiddles with the standard applicable to failure-to-act claims to create a new test: It holds that a pretrial detainee can state a due process violation for an official’s failure to act by showing that (i) the official made an intentional decision with respect to the plaintiffs conditions of confinement; (ii) the decision put the detainee at substantial risk of suffering serious harm; (iii) the official was objectively unreasonable in not fixing the risk; and (iv) the. failure to undertake a fix caused the detainee’s injuries. Maj. Op. at 1071.
This test simply doesn’t fit a failure-to-act claim. On its face, the majority’s test is underinclusive; it may relieve some officials of liability despite their deliberate indifference. For instance, under a straightforward application of the test, we would have come out a different way in Lolli v. County of Orange, 351 F.3d 410 (9th Cir. 2003). In that case, Lolli, a pretrial detainee, told Deputy Walker that he was diabetic, feeling very sick, and needed food. Id. at 420. Deputy Kent was merely standing near Deputy Walker when Lolli shared this information. Id. at 420. We held that Deputy Kent could be liable based on his failure to provide medical care to Lolli because a reasonable jury could have found that Deputy Kent actually perceived Lolli’s serious medical need and failed to bring him food. Id. at 420-21. Under the most natural reading of the majority’s new test, Deputy Kent could not be held liable because he made no “intentional decision with respect to the conditions under which the plaintiff was confined.” See Maj. Op. at 1071. In other words, while the majority’s test fits the specific facts of this case, where the individual officers intentionally and unreasonably housed Castro with a combative inmate, it doesn’t readily apply in other failure-to-aet cases where the plaintiff is unable to point to the officer’s intentional decision with respect to the plaintiffs conditions.
To avoid this outcome, the majority simply announces that a juror would likely conclude that if a “defendant actually knew *1087 of a substantial risk of serious harm and consciously took no action,” then “the defendant made an intentional decision” with respect to the conditions under which the plaintiff was confined, which satisfies the first prong of the majority’s new test. Maj. Op. at 1071 & n.4. Of course, this is merely the old deliberate indifference standard. The rest of the majority’s test adds nothing to this standard (the second prong requires a showing that the officer’s inaction “put the plaintiff at substantial risk of suffering serious harm,” and the third prong requires a finding that the officer “did not take reasonable available measures to abate that risk”). Maj. Op. at 1071. The majority apparently reinstates the deliberate indifference standard because it cannot explain how an official’s failure to act could otherwise constitute an intentional decision. In other words, the majority has simply dressed up the Farmer test in Kingsley language for no apparent reason; it conflates the two standards only to end up where we started.
In sum, the majority unnecessarily muddles our longstanding test for claims alleging that an officer’s failure to act amounted to punishment based on its mistaken assumption that it must achieve consistency with the test enunciated in Kingsley. But Kingsley applies to a different category of claims: those involving intentional, objectively unreasonable actions. Because the majority’s reasoning is both mistaken and unnecessary, I dissent.